Marc Zemel
Evelyn Mailander
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUGET SOUNDKEEPER ALLIANCE,     )
                                                   )
           Plaintiff,                   )
                                                   )
    v.                                     )
                                                   )    COMPLAINT
RABANCO, LTD. and REPUBLIC       )
SERVICES ALLIANCE GROUP, INC.,    )
                                                   )
          Defendants.                )
_____ )

## I.      INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Puget Soundkeeper Alliance ("Soundkeeper"), seeks declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendants Rabanco, Ltd. d/b/a Kent Meridian Disposal's and Republic Services Alliance Group, Inc.'s (collectively, "Rabanco") repeated and ongoing violations of the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing certain pollutant discharges from Rabanco's facility in Kent, Washington to navigable waters.

COMPLAINT - 1

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

## II.    JURISDICTION AND VENUE

2.    The Court has subject matter jurisdiction over Soundkeeper's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Soundkeeper requests.

3.    Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Soundkeeper notified Rabanco of its violations of the CWA and of Soundkeeper's intent to sue under the CWA by letter dated and postmarked January 14, 2026 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Soundkeeper notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue Rabanco by mailing copies of the Notice Letter to these individuals on January 14, 2026.

4.    At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.    The violations complained of in the Notice Letter are continuing and/or are reasonably likely to re-occur.

6.    At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

COMPLAINT - 2

7.      The source of the violations complained of is in King County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

### III.    PARTIES

8.      Soundkeeper is suing on behalf of itself and its members.

9.      Soundkeeper is a non-profit corporation organized under the laws of the state of Washington. Soundkeeper is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Soundkeeper is a membership organization and has at least two members who are injured by Rabanco's violations.

10.      Soundkeeper has representational standing to bring this action. Soundkeeper's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from Rabanco's facility, on water quality and aquatic species and wildlife that Soundkeeper's members observe, study, use, and enjoy. Soundkeeper's members are further concerned about the effects of discharges from Rabanco's facility on human health. In addition, discharges from Rabanco's facility lessen Soundkeeper's members' aesthetic enjoyment of nearby areas. Soundkeeper has members who live, work, swim, and recreate around or use Mill Creek, the Black River, and the Duwamish River which are affected by Rabanco's discharges. Soundkeeper's members' concerns about the effects of Rabanco's discharges are aggravated by Rabanco's failure to record and timely report information about its discharges and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic, and/or health interests of Soundkeeper and its members have been, are being, and will be adversely affected by

COMPLAINT - 3

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Rabanco's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

11.    For example, one member of Soundkeeper is an avid open water swimmer in Puget Sound, including at Alki Beach, part of Elliott Bay which the Duwamish River flows into, and into which Rabanco discharges its polluted stormwater. This member swims in these places year-round and intends to continue doing so. This member enjoys swimming at Alki Beach in part because it provides opportunities to observe wildlife and to build community with other open water swimmers. This member also enjoys kayaking on the Duwamish and plans to continue doing so in the future, including by participating in annual staff trainings for self-rescue certifications that many Soundkeeper staff members complete. This member is aware that Rabanco discharges elevated levels of zinc, turbidity, oil & grease, petroleum hydrocarbons, and copper to Mill Creek, which discharges to the Black River and Duwamish River, on a regular basis with its stormwater and violates its permit. This member reasonably worries about the adverse impacts of Rabanco's discharges and violations on the people, fish, and wildlife that use the river, and she feels deeply concerned.

12.    This member is also a Soundkeeper staff member who works on education, outreach, stewardship, and community service programs for Soundkeeper. Among these programs is conducting water quality monitoring on Mill Creek, into which Rabanco discharges. This member has been conducting two studies on Mill Creek, including a study that records turbidity and conductivity levels at half-mile intervals which began in 2025. Four times per year, this member samples the waters of Mill Creek for turbidity and conductivity levels at locations approximately a quarter mile upstream and a quarter mile downstream from Rabanco's facility. This member has recorded elevated levels of turbidity and conductivity downstream from

COMPLAINT - 4

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Rabanco's facility and is concerned about the effects of such elevated levels on people, fish, and wildlife. This member has plans to continue the turbidity and conductivity study on Mill Creek for the foreseeable future.

13.    Another member of Soundkeeper is an environmental scientist and toxicologist who has worked on Duwamish cleanup oversight and feels a profound connection to the river. This member also enjoys kayaking on the Duwamish, and surveying salmon mortality with Soundkeeper's Longfellow Creek program. This member loves bird and wildlife watching around the Duwamish River area. This member worries about the contaminant exposure experienced by fish as they travel the Duwamish, including exposure from contaminants released to the river from upstream polluters like Rabanco. This member has also forgone recreation opportunities in the Duwamish because of exposure concerns.

14.    Defendants Rabanco, Ltd. and Republic Services Alliance Group, Inc. are corporations authorized to conduct business under the laws of the state of Washington.

15.    Rabanco operates a solid waste collection facility located at or about 22010 76th Avenue S, Kent, WA 98032 (referred to herein as the "facility").

### IV.    LEGAL BACKGROUND

16.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, is prohibited.

17.    The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-

COMPLAINT - 5

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

18.    Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued iterations of the Industrial Stormwater General Permits, most recently on December 2, 2024, effective January 1, 2025, and set to expire December 31, 2029 (the "2025 ISGP"). The previous permit was issued on November 20, 2019, effective January 1, 2020, and expired December 31, 2024 (the "2020 ISGP"). The 2020 ISGP and 2025 ISGP (collectively, "the Permit"), contain substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

19.    The Permit imposes certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permit requires, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the Permit are described in detail in the Notice Letter, attached hereto as Exhibit 1 and incorporated herein by this reference.

V.    FACTS

COMPLAINT - 6

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

20.    Ecology granted Rabanco coverage for the facility under the 2020 ISGP under Permit number WAR000427. Rabanco was granted coverage under the 2025 ISGP under the same Permit number, WAR000427.

21.    Rabanco discharges stormwater and pollutants associated with industrial activity to Mill Creek, which discharges to the Black River and to the Duwamish River.

22.    Rabanco's facility is engaged in industrial activities and is approximately 5.33 acres. On information and belief, Rabanco's facility has at least three distinct points of discharge where stormwater and other pollutants leave the facility and eventually enter Mill Creek, including Outfall B (also known as stormwater sampling location D1E), the sewer to storm weir overflow location described in a July 2019 Ecology Inspection Report (also known as stormwater sampling location D1W), and surface runoff to roadside ditches via the facility's driveways and other locations.

23.    Rabanco has violated and continues to violate "effluent standards or limitations," as defined by 33 U.S.C. §1365(f), including conditions of the NPDES permit. *See* 33 U.S.C. §§ 1311(a) and 1342. Rabanco's violations of the Permit and the CWA are set forth in sections I through VIII of the Notice Letter attached hereto as <u>Exhibit 1</u> and are incorporated herein by this reference. In particular, and among the other violations described in the Notice Letter, Rabanco has violated the Permit by violating AKART standards, failing to prepare and implement an adequate SWPPP, failing to implement certain BMPs to control water quality, failing to collect and analyze quarterly samples as required, failing to timely submit Discharge Monitoring Reports as required, violating visual monitoring requirements, failing to implement corrective actions, failing to prevent unlawful non-stormwater discharges, violating annual report

COMPLAINT - 7

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

requirements, failing to record information, failing to retain records, and failing to report Permit violations.

24.    Rabanco discharges stormwater from the facility containing levels of pollutants that exceed the benchmark values established by the Permit, including the days on which Rabanco collected samples with the results identified in Table 1, and is likely to continue discharging comparably unacceptable levels of pollutants in its stormwater:

**Table 1 – Monitoring Point B / D1E[1] – Benchmark Exceedances**

| Quarter in which sample collected | Zn Concentration Benchmark: 117 µg/L | Turbidity Benchmark: 25 NTU | Cu Concentration Benchmark: 14 µg/L | Oil & Grease Benchmark: no visible oil & grease | NWTPHdx Benchmark: 10 mg/L |
|---|---|---|---|---|---|
| 1st Quarter 2020 | | | | Yes, sheen | |
| 3rd Quarter 2020 | 120 µg/L | | 23 µg/L | | |
| 4th Quarter 2020 | 130 | | 16 | | |
| 1st Quarter 2021 | 130 | | | | |
| 4th Quarter 2021 | 150 | | | | |
| 4th Quarter 2022 | 150 | | 19 | | |
| 1st Quarter 2023 | 230 | 49.1 NTU | | | |
| 2nd Quarter 2023 | 170 | | | | |
| 3rd Quarter 2023 | 390 | | 35 | | 24 mg/L |
| 4th Quarter 2023 | 197 | | | | |
| 1st Quarter 2024 | 170 | | | | |
| 2nd Quarter 2024 | 230 | | | | |

[1] Monitoring Point B and Monitoring Point D1E appear to be the same monitoring point, with the designation known and used interchangeably by Rabanco.

COMPLAINT - 8

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

| 4th Quarter 2024 | 120 | 34.1 | | | |
| 1st Quarter 2025 | 260 | | | | |

25.     Rabanco attests that the stormwater samples identified in Table 1 are representative of and accurately characterize the quality of stormwater discharges generated by Rabanco's facility during the associated calendar quarters. The stormwater monitoring data provided in Table 1 shows benchmark exceedances included in the stormwater monitoring results that Rabanco submitted to Ecology.

26.     Rabanco's exceedances of the benchmark values indicate that Rabanco is failing to apply AKART to its discharges and is failing to implement an adequate SWPPP and BMPs. Rabanco violated and continues to violate Conditions S10 and S3 of the Permits by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permit, and/or by not applying AKART to discharges from the facility. These requirements and Rabanco's violations thereof are described in detail in section I and section II of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference, with the exception of section II, paragraphs 3 and 5. These violations are reasonably likely to recur.

27.     Rabanco has violated and continues to violate the monitoring requirements of Conditions S3.B.5, S4.B, S5, S7, and S9 of the Permit. Rabanco has failed to sample its stormwater discharges at least once during every calendar quarter at each distinct point of discharge offsite except for substantially identical outfalls excluded by a sufficiently detailed analysis in the facility's SWPPP. Rabanco has failed to analyze stormwater samples for required parameters during the second quarter of 2021, third quarter of 2021, third quarter of 2024, second quarter of 2025, and third quarter of 2025. Rabanco has also failed to analyze stormwater samples from the sewer to storm weir overflow location described in a July 2019 Ecology

COMPLAINT - 9

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Inspection Report every quarter for the past five years. Further, Rabanco has entirely failed to monitor surface runoff from facility driveway(s) and other locations and from stormwater sampling point D1W for the past five years. Rabanco has failed to submit discharge monitoring reports with monitoring data from this overflow location, from surface runoff, and from stormwater sampling point D1W every quarter for the past five years. On information and belief, Rabanco has failed to comply with visual monitoring requirements required by Permit Condition S7 by failing to conduct Industrial Stormwater Monthly Inspections, failing to maintain the requisite inspection reports and checklists, and failing to make the requisite certifications and summaries by qualified personnel each and every month for the last five years. Rabanco's violations of the Permit's monitoring requirements are described in section III of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference. These violations are reasonably likely to recur.

28.    Rabanco triggered Level One Corrective Action requirements under the Permit for each benchmark exceedance identified in Table 1, above. Rabanco has violated the requirements of Condition S8.B of the Permits by failing to conduct all Level One Corrective Action requirements in accordance with the Permit's conditions, including the required inspection to investigate the cause; review, revision, and certification of the SWPPP; the required implementation of additional operational source control BMPs; and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, including the benchmark exceedances listed in Table 1 above. These Corrective Action requirements and Rabanco's violations thereof are described in section IV.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

COMPLAINT - 10

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

29.     Rabanco triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any two quarters of a calendar year for the same pollutant parameter. Rabanco has violated the requirements of Condition S8.C of the Permits by failing to conduct a Level Two Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional structural source control BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any two quarters during a calendar year for the same pollutant parameter, including the benchmark exceedances listed in Table 1 above. These violations include but are not limited to Rabanco's failure to timely perform Level Two Corrective Action requirements for copper and zinc triggered by its stormwater sampling during calendar year 2020; for zinc triggered by its stormwater sampling during calendar year 2021; for zinc triggered by its stormwater sampling during calendar year 2023; and for zinc triggered by its stormwater sampling during calendar year 2024. These corrective action requirements and Rabanco's violations thereof are described in section IV.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

30.     Rabanco triggered Level Three Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any three quarters of a calendar year for the same pollutant parameter. Rabanco has violated the requirements of Condition S8.D of the Permit by failing to conduct a Level Three Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required preparation and submission of an engineering report describing

COMPLAINT - 11

additional treatment BMPs, the required submission of an Operation and Maintenance Manual, the required implementation of additional treatment BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark for any three quarters during a calendar year, including the benchmark exceedances listed in Table 1 above. These violations include Rabanco's failure to timely perform Level Three Corrective Action requirements for zinc triggered by its stormwater sampling during calendar year 2023 and for zinc triggered by its stormwater sampling during calendar year 2024. These corrective action requirements and Rabanco's violations thereof are described in section IV.C of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

31.     Rabanco has violated the prohibition on illicit discharges of the Permit's Condition S5.E. As documented by the Department of Ecology during a 2019 inspection, Rabanco discharges process wastewater from its sanitary sewer via a structure with a weir wall within Rabanco's stormwater drainage system, which discharges to Mill Creek. These are illicit discharges under the Permit. Rabanco does not possess and has never possessed an NPDES permit for its non-stormwater discharges of this process wastewater. Discharging non-stormwater waters directly to Mill Creek from Rabanco's stormwater conveyance system are unpermitted point-source discharges of pollutants to waters of the United States that violate CWA Section 301(a), 33 U.S.C. § 1311(a), prohibition on pollutant discharges. These violations occurred on each and every day over the past five years that a precipitation event or sewer line backup or blockage caused Rabanco's sanitary sewer system to overflow over the weir wall and into the stormwater drainage system. These illicit and prohibited discharges are described in

COMPLAINT - 12

section V of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

32.     Rabanco has failed to comply with the requirement to submit an accurate and complete annual report to Ecology each year as required by Permit Condition S9.C. Rabanco has failed to comply with the requirement to document its corrective actions as required by Permit Conditions S8.B-D. Rabanco has violated these conditions because the annual reports submitted by Rabanco do not include the required information including as to corrective actions. These requirements and Rabanco's violations thereof are described in section VI of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

33.     Rabanco has violated the recordkeeping requirements of Permit Condition S4.B.4 because Rabanco does not record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Rabanco collected the sample within the first 12 hours of stormwater discharge event, an explanation of why Rabanco could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling, as required by the Permit Condition. These requirements and Rabanco's violations thereof are described in section VII.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

34.     Rabanco has violated the record keeping requirements of Permit Condition S9.D. Rabanco does not retain for a minimum of five years a copy of the current Permit, a copy of Rabanco's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all

COMPLAINT - 13

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit, as required by the Permit Conditions. These requirements and Rabanco's violations thereof are described in section VII.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

35.    Condition S9.F of the Permit requires Rabanco to take certain actions, including reporting to Ecology and immediately taking actions, in the event Rabanco is unable to comply with any terms and conditions of the Permit which may endanger human health or the environment. Rabanco has violated these requirements of the Permit by failing to report and correct permit violations, including each and every time Rabanco violated corrective action requirements as described above in paragraphs 28-30, each and every time Rabanco discharged illicit and/or non-stormwater discharges as described above in paragraph 31, and each and every time Rabanco discharged stormwater with amounts of pollutants in excess of the Permit benchmarks as described in paragraph 24 above. These requirements and Rabanco's violations thereof are described in section VIII of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

36.    A significant penalty should be imposed against Rabanco under the penalty factors set forth in 33 U.S.C. § 1319(d).

37.    Rabanco's violations were avoidable had Rabanco been diligent in overseeing facility operations and maintenance.

38.    Rabanco benefited economically as a consequence of its violations and failure to implement improvements at the facility.

COMPLAINT - 14

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

39. Rabanco's violations caused and contributed to pollution in the water column and sediments of the receiving water, which may be ameliorated by an order from the Court requiring clean up or monitoring.

### VI.   CAUSE OF ACTION

40. The preceding paragraphs and the allegations in the Notice Letter attached hereto as Exhibit 1 are incorporated herein.

41. Rabanco's violations of its NPDES permit described herein and in the Notice Letter constitute violations of "effluent standard(s) or limitation(s)" as defined by Section 505 of the CWA, 33 U.S.C. § 1365.

42. No agency has taken an enforcement action constituting diligent prosecution or otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

43. Prior notice of violations and claims was provided to Rabanco and others as required.

44. These violations committed by Rabanco are ongoing or are reasonably likely to reoccur. Any and all additional violations of the Permit and the CWA which occur after those described in Soundkeeper's Notice Letter, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

45. Without the imposition of appropriate civil penalties and the issuance of an injunction, Rabanco is likely to continue to violate the Permit and the CWA to the further injury of Soundkeeper, its members, and others.

46. A copy of this Complaint was served upon the Attorney General of the United States and the Administrator of the U.S. EPA as required by 33 U.S.C. § 1365(c)(3).

### VII.   RELIEF REQUESTED

COMPLAINT - 15

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Wherefore, Soundkeeper respectfully requests that this Court grant the following relief:

A.    Issue a declaratory judgment that Rabanco has violated and continues to be in violation of the Permit and the CWA;

B.    Enjoin Rabanco from operating the facility in a manner that results in further violations of the Permit and the CWA;

C.    Order Rabanco to immediately develop and implement a SWPPP that complies with the Permit at the facility;

D.    Order Rabanco to allow Soundkeeper to participate in the development and implementation of Rabanco's SWPPP and compliance plan;

E.    Order Rabanco to provide Soundkeeper, for a period beginning on the date of the Court's Order and running for three years after Rabanco achieves compliance with all of the conditions of the Permit, with copies of all reports and other documents which Rabanco submits to Ecology regarding Rabanco's coverage under the Permit at the facility at the time these documents are submitted;

F.    Order Rabanco to take specific actions to remediate the environmental harm caused by its violations;

G.    Order Rabanco to pay civil penalties of $68,445 per day of violation for each violation committed by Rabanco, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

H.    Award Soundkeeper its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

I.    Award such other relief as this Court deems appropriate.

COMPLAINT - 16

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

RESPECTFULLY SUBMITTED this 30th day of March, 2026.

SMITH & LOWNEY, PLLC

By:    By: *s/Marc Zemel*
Marc Zemel, WSBA #44325
By: *s/Evelyn Mailander*
Evelyn Mailander, WSBA #62827
Attorneys for Plaintiff
2317 E. John St.,
Seattle, WA 98112
Tel: (206) 860-2883
Fax: (206) 860-4187
E-mail: marc@smithandlowney.com,
evelyn@smithandlowney.com

COMPLAINT - 17

# EXHIBIT 1

# SMITH & LOWNEY

— PLLC —

## ATTORNEYS AT LAW

January 14, 2026

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Rabanco, Ltd. d/b/a/ Kent Meridian Disposal
22010 76th Avenue S
Kent, WA 98032

Managing Agent
Republic Services Alliance Group, Inc.
18500 North Allied Way
Phoenix, AZ 85054

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson St. #107, Seattle, WA 98109, (206) 297-7002.  Any response or correspondence related to this matter should be directed to us at the letterhead address (Smith & Lowney, PLLC, 2317 E John St., Seattle, WA 98112).  This letter is to provide you with sixty days' notice of Soundkeeper's intent to file a citizen suit against Republic Services Alliance Group, Inc. and Rabanco, Ltd., d.b.a. Kent Meridian Disposal ("Kent Meridian"), under Section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below.  This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Kent Meridian's National Pollution Discharge Elimination System ("NPDES") permit.

Kent Meridian was granted coverage under Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") effective January 1, 2020 and expired on December 31, 2024 under NPDES No. WAR000427 (the "2020 Permit").  Ecology granted Kent Meridian coverage under the current iteration of the ISGP effective January 1, 2025, and set to expire on December 31, 2029 (the "2025 Permit") and maintains the same permit number, WAR000427.

Kent Meridian has violated and continues to violate effluent standards and limitations under the CWA (see 33 U.S.C. §§ 1365(f)) including the terms and conditions of the 2020 Permit and the 2025 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from, its facility located at or about 22010 76th Avenue S, Kent, WA 98032 (the "facility") as described herein, to Lower



Mill Creek, which flows to the Green River. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by Kent Meridian.

## I.      COMPLIANCE WITH STANDARDS.

Condition S10.C of the Permits requires Kent Meridian to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate Stormwater Pollution Prevention Plan ("SWPPP") and best management practices ("BMPs"). Kent Meridian has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs, as evidenced by the elevated levels of pollutants in its discharge indicated in Table 1 and as described below in this notice of intent to sue.

**Table 1 – Monitoring Point B/D1E\* Benchmark Exceedances**

| Quarter in which sample collected | Zn Concentration (Benchmark 117 µg/L) | Turbidity (Benchmark 25 NTU) | Cu Concentration (Benchmark 14 µg/L) | Oil & Grease (Benchmark No visible sheen) | NWTPHdx (Benchmark 10 mg/L) |
|---|---|---|---|---|---|
| 1st Quarter 2020 | | | | Yes, sheen | |
| 3rd Quarter 2020 | 120 µg/L | | 23 µg/L | | |
| 4th Quarter 2020 | 130 | | 16 | | |
| 1st Quarter 2021 | 130 | | | | |
| 4th Quarter 2021 | 150 | | | | |
| 4th Quarter 2022 | 150 | | 19 | | |
| 1st Quarter 2023 | 230 | 49.1 NTU | | | |
| 2nd Quarter 2023 | 170 | | | | |
| 3rd Quarter 2023 | 390 | | 35 | | 24 mg/L |
| 4th Quarter 2023 | 197 | | | | |
| 1st Quarter 2024 | 170 | | | | |
| 2nd Quarter 2024 | 230 | | | | |
| 4th Quarter 2024 | 120 | 34.1 | | | |

| 1st Quarter 2025 | 260 | | | | |
|---|---|---|---|---|---|

*Monitoring Point B and Monitoring Point D1E appear to be the same monitoring point, with the designation known and used interchangeably by Kent Meridian.

## II.    STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS

Kent Meridian is in violation of the Permits' SWPPP provisions as follows:

1.  Condition S3.A of the Permits requires Kent Meridian to develop and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions.  Kent Meridian has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

2.  The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs.  Condition S3.B.4 of the Permits require that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater.  Condition S3.A.2 of the Permits requires that the SWPPP include BMPs consistent with the Stormwater Management Manual for Western Washington (SWMMWW), available at https://fortress.wa.gov/ecy/ezshare/wq/SWMMs/2024SWMMWW/2024_SWMMWW.htm or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs.  Kent Meridian's SWPPP does not comply with these requirements because it does not adequately describe BMPs, rather, the SWPPP includes language copied verbatim from the SWMMWW and is lacking a detailed explanation of how and where the selected BMPs are being implemented at the facility.

3.  Kent Meridian's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not the flow of goods and materials through the facility.

4.  Kent Meridian's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies a unique identifying number for each discharge point, areas of pollutant contact associated with specific industrial activities, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, locations where vehicles are parked or stored, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

5.  Kent Meridian's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required.  The SWPPP does not identify all areas associated with loading and unloading of material handled at the facility, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

Notice of Intent to Sue - 3

6.  Kent Meridian's SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials.  The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required.  The SWPPP does not include the method and location of on-site disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

7.  Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs and implement certain mandatory BMPs unless site conditions render the BMP unnecessary or infeasible, and an alternative and demonstrably equivalent BMP is provided. Kent Meridian is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

8.  Kent Meridian's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good housekeeping (including a schedule/frequency for each housekeeping task and how tires at the facility will be stored to prevent contact with stormwater); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task as well as a maintenance log for completing each task); employee and contractor/vendor training (including an overview of what is in the SWPPP, who is responsible for maintaining the SWPPP and its location onsite, employees' role in ensuring proper maintenance of BMPs, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, a log of the dates on which specific employees received training, and a report of all electronically performed trainings, as applicable); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, certification of compliance with the SWPPP and Permit, and all completed inspection reports).

9.  Kent Meridian's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include adequate measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

10. Kent Meridian's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

11.  Kent Meridian's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required.  The SWPPP does not include a sampling plan that: identifies points of discharge to surface waters, stormwater drainage systems, or discrete groundwater infiltration locations; documents why each discharge point is not sampled; and identifies each sampling point by its unique identifying number.

Notice of Intent to Sue - 4

III.    **MONITORING AND REPORTING VIOLATIONS**

A.    **Failure to Collect Quarterly Samples**

Condition S4.B of the Permits requires Kent Meridian to collect a sample of its stormwater discharge once during every calendar quarter from each designated sampling location. Conditions S4.B.3.a of the 2020 Permit and S4.B.3 of the 2025 Permit require Kent Meridian to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled. These conditions set forth sample collection criteria but require the collection of a sample even if the criteria cannot be met.  The facility has at least two distinct points of discharge off-site: Outfall B, as well as the sewer to storm weir overflow location described in a July 2019 Ecology Inspection Report and the driveways on the western boundary of the facility.

Kent Meridian violated these requirements by failing to collect stormwater samples at any of its discharge points during the second quarter of 2021, third quarter of 2021, third quarter of 2022, third quarter of 2024, second quarter of 2025, and third quarter of 2025.

Kent Meridian has also violated and continues to violate these conditions because it does not sample each distinct point of discharge off-site, including the sewer to storm weir overflow location described in a July 2019 Ecology Inspection Report, which directed Kent Meridian to begin sampling from this location more than six years ago, and the driveways on the western boundary of the facility. These violations have occurred and continue to occur each and every quarter during the last five years that Kent Meridian was and is required to sample its stormwater discharges, including the quarters in which it collected stormwater discharge samples from some, but not each, point of discharge.  These violations will continue until Kent Meridian commences monitoring all distinct points of discharge.

B.    **Failure to Analyze Quarterly Samples**

Condition S5.A.1 of the Permits requires Kent Meridian to analyze stormwater samples collected quarterly for turbidity, pH, total copper, and total zinc. Condition S5.B.1 of the Permits requires Kent Meridian to analyze stormwater samples collected quarterly for petroleum hydrocarbons (NAICS 484110, General Freight Trucking, Local) and PFAS compounds (NAICS 562111, Solid Waste Collection). Beginning in 2028, Kent Meridian will be required to analyze stormwater samples collected quarterly for 6PPD-quinone.

Kent Meridian violated these conditions by failing to analyze stormwater samples collected from Monitoring Point B / D1E for turbidity, pH, total copper, total zinc, and petroleum hydrocarbons during the following quarters: second quarter of 2021, third quarter of 2021, third quarter of 2022, third quarter of 2024, second quarter of 2025, and third quarter of 2025. Additionally, Kent Meridian failed to analyze stormwater samples collected from Monitoring Point B / D1E for PFAS compounds in the second and third quarters of 2025.

Moreover, Kent Meridian violated Permit Conditions S5.A and S5.B by failing to analyze any stormwater samples collected in the past five years from the sewer to storm weir overflow location described in a July 2019 Ecology Inspection Report.

### C.     Failure to Timely Submit Discharge Monitoring Reports

Condition S9.B of the Permits requires Kent Meridian to use DMR forms provided or approved by Ecology to summarize, report and submit monitoring data to Ecology.  For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period. Kent Meridian has violated these conditions by failing to submit a DMR reporting sampling data for the sewer to storm weir overflow location described in a July 2019 Ecology Inspection Report within the time prescribed for the first, second, third, and fourth quarters of 2020; first, second, third, and fourth quarters of 2021; first, second, third, and fourth quarters of 2022; first, second, third, and fourth quarters of 2023; first, second, third, and fourth quarters of 2024; and the first, second, and third quarters of 2025.

### D.     Failure to Comply with Visual Monitoring Requirements

Conditions S7.A and B of the Permits require that monthly visual inspections be conducted at the facility by qualified personnel.  Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges or illicit connections, a verification that the descriptions of potential pollutant sources required by the permit are accurate, a verification that the site map in the SWPPP reflects current conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed). Once annually, dumpsters must be inspected for holes or defects.

Condition S7.C of the Permits requires that Kent Meridian record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required.  The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits, a summary report and schedule of implementation of the remedial actions that Kent Meridian plans to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the person conducting the facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

Kent Meridian is in violation of these requirements of Condition S7 of the Permits because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries.

## IV.     CORRECTIVE ACTION VIOLATIONS

### A.     Violations of the Level One Requirements

Condition S8.B of the Permits requires Kent Meridian take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range for pH.

As described by Condition S8.B of the Permits, a Level One Corrective Action requires Kent Meridian to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits.  Condition S8.B.3 of the 2020 Permit and S8.B.2 of the 2025 Permit require Kent Meridian to implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Condition S5.A and Table 2 of the Permits establishes the following benchmarks: turbidity 25 NTU; pH 5 – 9 SU; total copper 14 µg/L; and total zinc 117 µg/L. Condition S5.B and Table 3 of the Permits establish the following additional benchmark for NAICS code 484110 (General Freight Trucking, Local) that is applicable to Kent Meridian: petroleum hydrocarbons 10 mg/L.

Kent Meridian has violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH, including the benchmark excursions listed in Table 1 above.

**B.**     **Violations of the Level Two Requirements**

Condition S8.C of the Permits requires Kent Meridian take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires Kent Meridian to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits. Condition S8.C.4 of the Permits requires Kent Meridian implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later August 31st of the following year.

The Permits establish the benchmarks applicable to Kent Meridian described in Section IV.A of this notice of intent to sue letter.

Kent Meridian has violated the requirements of the Permits described above by failing to timely conduct a Level Two Corrective Action in accordance with permit conditions, including the required review, revision

Notice of Intent to Sue - 7

and certification of the SWPPP, the required implementation of additional BMPs, including additional structural source control BMPs, and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year.  As indicated in Table 1 above, these violations include, but are not limited to, Kent Meridian's failure to fulfill these obligations for copper and zinc triggered by its stormwater sampling during calendar year 2020; for zinc triggered by stormwater sampling during calendar year 2021; for zinc triggered by stormwater sampling during calendar year 2023; and for zinc triggered by stormwater sampling during calendar year 2024.

### C.      Violations of the Level Three Requirements

Condition S8.D of the Permits requires Kent Meridian take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any three quarters during a calendar year.

As described by Condition S8.D of the Permits, a Level Three Corrective Action requires Kent Meridian: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs, and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level Three Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced, or it new/additional treatment BMPs will be installed.  Condition S8.D.2 of the Permits requires that a licensed professional engineer, geologist, hydrogeologist, of certified professional in stormwater quality must review, sign, and certify the portion of the SWPPP that addresses stormwater treatment structures or processes.  *See* Permit Appendix 2 (defining "qualified industrial stormwater professional").

Condition S8.D.3 of the Permits requires that, before installing BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, the Kent Meridian submit an engineering report, plans, and specifications, and an operations and maintenance manual to Ecology for review in accordance with chapter 173-204 of the Washington Administrative Code.  The engineering report must be submitted no later than six months after the last day of the calendar year in which the Level 3 was triggered (2025 Permit) or by the May 15th prior to the Level 3 deadline (2020 Permit).  The plans and specifications and the operations and maintenance manual must be submitted to Ecology no later than 30 days after construction/installation is complete.

Condition S8.D.5 of the Permits requires Kent Meridian fully implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

The Permits establish the benchmarks applicable to Kent Meridian described in Section IV.A of this notice of intent to sue letter.

Kent Meridian has violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with permit conditions, including: the required review, revision and certification of the SWPPP; the requirement to have a specified professional sign and certify the portion of the SWPPP pertaining to treatment; the required implementation of additional BMPs, including additional treatment BMPs; the required submission of an engineering report, plans, specifications, and an operations and maintenance plan; and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year. As indicated in Table 1 above, these violations include, but are not limited to, Kent Meridian's failure to fulfill these obligations for zinc triggered by its stormwater sampling during calendar year 2023 and for zinc triggered by its stormwater sampling during calendar year 2024.

## V.   UNLAWFUL DISCHARGES

An Ecology Inspection of the Kent Meridian facility on July 10, 2019 observed that there is a sewer connection with an overflow to stormwater drainage via a structure with a weir wall, and observed other illicit oily discharges. The Ecology inspector noted that the structure with a sewer overflow to stormwater appeared to have residue and debris on top of the weir wall, indicating that discharges have occurred over the top of the weir wall and to the stormwater drainage system. These discharges occur during each precipitation event which causes the sewer line to overflow and discharge stormwater and wastewater from the maintenance bays, wash station, and fueling island to Kent Meridian's storm drain system. The illicit oily discharges occur each time oil leaks or spills are not cleaned up before a discharge event.

### A.   Illicit and Prohibited Discharges

Condition S5.E of the Permits prohibits the discharge of process wastewater (including stormwater that comingles with process wastewater) and illicit discharges or connections. Appendix 2 to the Permits defines "illicit discharges" as "any discharge that is not composed entirely of stormwater," with some limited exceptions not relevant here.  Appendix 2 to the 2025 Permit defines "illicit connections" as "any infrastructure connection to a public or private stormwater collection or conveyance system that is not intended, permitted, or used for collecting and conveying stormwater or non-stormwater discharges" pursuant to the Permit, such as sanitary sewers. Condition S5.F of the Permits requires Kent Meridian to manage stormwater to prevent the discharge of synthetic, natural or processed oil or oil containing products as identified by an oil sheen, and trash and floating debris, prohibiting those discharges. Kent Meridian's discharges of wastewater from the sanitary sewer during overflow events violate these Permit conditions. These prohibited discharges occurred each and every day over the past five years that a precipitation event caused Kent Meridian's sanitary sewer system to overflow over the weir wall and into the stormwater drainage system and are reasonably likely to continue to occur.

Condition S7.B.3.b of the 2020 Permit and S7.B.4.b of the 2025 Permit also requires Kent Meridian to eliminate illicit discharges within 30 days of discovery and illicit connections within 6 months of discovery; and Condition S3.B.4.b.i.7 of the Permits require Kent Meridian's SWPPP to include measures to identify and eliminate illicit discharges and connections to surface waters.  Kent Meridian violated these requirements by failing to eliminate its illicit discharges altogether over the last five years.

Additionally, Condition S7.B.3.a of the 2020 Permit and S7.B.4.a requires Kent Meridian to notify the Department of Ecology within seven days of any discovery of an illicit discharge. Kent Meridian violated this requirement by failing to notify Ecology about its illicit discharges within seven days of each occurrence over the past five years.

### B. Unpermitted Discharges

The Permits authorize only the discharges of stormwater and pollutants contained in stormwater. Kent Meridian does not possess and has never possessed an NPDES permit for its non-stormwater direct discharges of wastewater from the sanitary sewer to Kent Meridian's stormwater drainage system. The wastewater from Kent Meridian's sanitary sewer discharges from the sanitary sewer system by overflowing the weir wall and entering the storm drain system, and discharging to the City of Kent's municipal separate storm sewer system. These point source discharges violate the Clean Water Act's § 301(a), 33 U.S.C. § 1311(a), prohibition on pollutant discharges. These violations occurred each and every day over the past five years on which the Kent Meridian facility experienced a precipitation event that caused the sanitary sewer to overflow into the stormwater drainage system and are reasonably likely to continue to occur whenever such a precipitation event occurs going forward.

## VI. VIOLATIONS OF THE ANNUAL REPORT REQUIREMENTS

Condition S9.C of the Permits require Kent Meridian to submit an accurate and complete annual report to Ecology no later than May 15 of each year. The annual report must include corrective action documentation as required in Condition S8.B – D of the Permits. If a corrective action is not yet completed at the time of submission of the annual report, Kent Meridian must describe the status of any outstanding corrective action. Specific information to be included in the annual report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level 1, 2, or 3 corrective actions completed during the previous calendar year, including the dates corrective actions were completed, and description of the status of any Level 2 or 3 corrective actions triggered during the previous calendar year, including identification of the date Kent Meridian expects to complete corrective actions.

Kent Meridian has violated this condition. The annual report submitted by Kent Meridian for 2021 (in 2022) does not include the required information. For example, the there is no description of the additional operational source control BMPs Kent Meridian implemented or planned to implement as part of its Level 1 corrective actions. Rather, the 2021 annual report contains the same Level 1 corrective actions as Kent Meridian's 2020 annual report. The 2022 annual report (submitted in 2023), 2023 annual report (submitted in 2024), and 2024 annual report (submitted in 2025) are similarly deficient. The 2023 annual report does not include a description of the additional treatment BMPs Kent Meridian implemented or planned to implement as part of its Level 3 corrective actions in response to zinc benchmark exceedances in 2023. Rather, it describes installation of the oil-water separator, which was a previous corrective action. Kent Meridian's 2024 annual report is similarly deficient. The 2023 annual report also does not address Kent Meridian's TPH exceedance in the third quarter of 2023.

## VII. VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS

### A. Failure to Record Information

Notice of Intent to Sue - 10

Condition S4.B.4 of the Permits requires Kent Meridian record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Kent Meridian collected the sample within the first 12 hours of stormwater discharge event, an explanation of why Kent Meridian could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. Kent Meridian is in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

### B.    Failure to Retain Records

Condition S9.D of the 2020 Permits require Kent Meridian to retain for a minimum of five years a copy of the current Permit, a copy of Kent Meridian's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. Kent Meridian is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

## VIII.    FAILURE TO REPORT PERMIT VIOLATIONS

Condition S9.F of the Permits requires Kent Meridian to take certain actions in the event Kent Meridian is unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment, or exceed any numeric effluent limitation in the permit. In such circumstances, Kent Meridian must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and Kent Meridian must immediately notify the appropriate Ecology regional office of the failure to comply. Kent Meridian must then submit a detailed written report to Ecology, including specified details, within 5 days of the time Kent Meridian became aware of the circumstances, unless Ecology requests an earlier submission.

Kent Meridian routinely violates these requirements, including each and every time Kent Meridian discharges illicit and/or non-stormwater discharges, as described in Section V to this notice of intent to sue, above; each and every time Kent Meridian failed to comply with the corrective action requirements described in Section IV of this notice of intent to sue; and each and every time Kent Meridian discharged stormwater with concentrations of pollutants in excess of the Permit benchmarks, as described in Table 1, above. All these violations may endanger human health or the environment.

## IX.    REQUEST FOR SWPPP

Pursuant to Condition S9.G of the Permits, Soundkeeper hereby requests that Kent Meridian provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Kent Meridian fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the Permits, it will be in violation of that condition, which violation shall also be subject to this notice of intent to sue and any ensuing lawsuit.

## X.    CONCLUSION

The above-described violations reflect those indicated by the information currently available to Soundkeeper.  These violations are ongoing. Soundkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $68,445 per violation per day. *See* 40 C.F.R. § 19.4.  In addition to civil penalties, Soundkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Further, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Soundkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Rabanco, Ltd. and Republic Services Alliance Group, Inc. under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms.  If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly.  We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

SMITH & LOWNEY, PLLC

By:    */s/ Evelyn Mailander*
Evelyn Mailander
Marc Zemel

cc:    Lee Zeldin, Administrator, U.S. EPA
Emma Pokon, Region 10 Administrator, U.S. EPA
Casey Sixkiller, Director, Washington Department of Ecology
CT Corporation System, Registered Agent (711 Capitol Way S, Suite 204, Olympia, WA, 98501)
Counsel for Rabanco/Republic, Michael Nesteroff, Ballard Spahr LLP (via e-mail: NesteroffM@ballardspahr.com)

Notice of Intent to Sue - 12